Our third case for this morning is Towle v. Board of Education School District of Brown Deer, Wisconsin. Mr. Schumacher. May it please the Court, I am Robert Schumacher, of Red Ross and Stephens in Madison, appearing on behalf of Plaintiff Appellant Edward Towle, who is seated at council table. We respectfully request that the Court of Appeals reverse the District Court's dismissal of Mr. Towle's fifth claim, violation of due process on the United States Constitution, on summary judgment, and remand this claim back to the District Court with instructions to allow Mr. Towle to pursue this claim both with respect to deprivation of his property and deprivation of his liberty interest. I am prepared to discuss how the facts are sufficient to show that Mr. Towle was deprived of a property interest without due process and violation of the U.S. Constitution. I am also prepared to discuss how, under the rules of pleading, the allegations of the fifth claim are sufficient to allow Mr. Towle to pursue that contention or that he should have been permitted to amend his complaint. Finally, I am prepared to discuss how the genuine issue of material fact pursues summary judgment of Mr. Towle's fifth claim as it relates to deprivation of his liberty interest. Let me tell you one thing that concerns me about this. It's certainly true, as you point out, that parties have no obligation to plead legal theories and that one is to look at the underlying facts, but that principle itself arises out of the law concerning the disposition of motions under Rule 12b-6. So, if somebody said, you know, if this had been a 12b-6 motion saying, well, you know, you forgot to allege liberty, or sorry, property in Count 5, I'd be very sympathetic to this. But we've also said that as a case moves forward and gets developed, one needs to get more specific. One needs to be clear about what are, in fact, the legal theories that are being presented. You know, discovery depends on it. Case management orders depend on it. The preparation that people put into it. And this doesn't come along until long after this litigation is started. And there is that contrast between Count 4 and Count 5 just sitting there. And the district judge thought, well, you know, for whatever reason, parties are masters of their own complaints. Mr. Towle is making a liberty claim under the federal Constitution, but a liberty and a property claim under the Wisconsin Constitution. There's certainly nothing that says he can't do that. And so I want to know why this principle about pleading legal theories hasn't just sort of fallen out of the case, and he didn't have an obligation to be more clear sooner. I think the answer, Your Honor, to the question is, is the fifth claim, violation of due process in the United States Constitution, sufficient as pled to allow him to pursue that claim? If he hadn't said liberty interest, I think you'd have a stronger case. But you've pointed the other side in the direction that what they've got to think about is stigma, they have to think about Paul versus Davis, they have to think about that line of cases, and that they're not thinking about Roth and Sinderman and the property law. Well, if we hadn't said liberty interest, we wouldn't have a problem. Or if we hadn't said liberty interest and not included property interest, we wouldn't be here. But it still goes to the question, Your Honor, of was the pleading sufficient to allow him to pursue that claim? Why are we on the pleading? So that's what I'm trying to ask you. I think that's the same standard on a motion to dismiss or in looking at the pleadings. Oh, I don't think so. Well, I mean, because we're at the Rule 56 stage for this, and that's the point in the litigation. I mean, we're sitting here with a very experienced district court judge. That's the point in the litigation where the parties have got to commit. And that's where this came up. I think the first stage of Rule 56 is look at the pleadings, and see if they could have said a complaint, and then look at whether there are genuine issues of material effect. Wait, wait, counsel. Judge Wood is correct. Motion to dismiss the earlier stage, in a second, it would have been granted leave to amend without prejudice. Right, right, right. We're at summary judgment stage. And so I think here, Your Honor, Judge Goldman, here the question is was the complaint sufficient at that stage? And I think the principle still applies, that if we had failed to say property interest in the fifth claim, we would have been permitted to pursue it. I think the law is also incorrect. Well, there wouldn't have been any reliance interest on the part of the school board thinking that you weren't doing that. They might have looked at count four, figured it was just a mirror image. But you actually pointed them in a different – I'm not going to say you misled them. I think it was probably all carelessness. But it pointed them in the wrong direction. Well, it mentioned liberty interest. It didn't preclude property interest. That's the question before us, actually. But in the other pleadings, you did mention both. So for you not to mention it in the federal proceeding with this, with count four here, I don't understand why you didn't do it. Right. And in our motion for leave to amend, alternative motion for leave to amend, I explained in my affidavit that at the time that we amended the complaint, that we included additional detail about liberty interest in order to meet some of the requirements, some of the elements of the head case. And if you look at the allegations that are in the fifth claim as opposed to the fourth claim, and it tracks the head case, or I don't remember if I looked at the head case in particular, but we tracked those interests. So we did use the word liberty interest, and we did at that stage of the proceedings either leave out property interest inadvertently, or we mislabeled the term. What we were suing about, one of the things we were suing about is the property interest. We were suing about a property that had a liberty interest. So if we had left out the term, it would not have been fatal. And the law is also, if we had used the wrong legal term, it's not fatal. So for that reason, I think the court should have allowed us to clarify the complaint, which we did. But, counsel, you were at the point, the motion for summary judgment had been fully briefed. No, it had not been fully briefed. Excuse me, Your Honor. It had not? No. Here is the sequence of events that occurred. When the defendants filed their motion for summary judgment, they used the phrase, in a claim brought under the Wisconsin Constitution, Mr. Towle claims the operation is property interest. Are you claiming that they didn't file a fully briefed motion for summary judgment? No. They filed their motion. And it was fully briefed, as Judge Coleman says. I thought she meant all the briefing was completed. No, no, no. No, no. They had filed their brief. Yes. We then, while we were working on our brief, saw that, looked at it, figured out why they said that. And let me jump in here, because as I understand it, they filed for summary judgment on May 18, 2016. Yes. And it isn't until August the 9th that you filed this motion to clarify the scope of the fifth claim. It seems to me if you had spotted this and instantly moved in to say this is wrong, you would have had a stronger argument on diligence. Actually, you responded on July 12th. No, on June 30th, we contacted the Defendant's Counsel. June 30th, we contacted the Defendant's Counsel and said, we see what you did here. Will you agree to clarify it? Or if you think we need to amend, to amend. So we did that first. On June 30th? On June 30th by telephone. I believe it was June 30th. Shortly thereafter, before they filed their response, we wrote a letter following up on that telephone conversation. Wait, wait, wait. Counsel, you have me. I don't know about my colleagues, but I'm totally confused here. On May 18th was the motion for summary judgment, correct? And then you responded on July 12th. Right. And it wasn't until after that, in early August, that you tried to do your withdrawal and all of that. I think the sequence of events, Your Honor, is on June, and this would be in the appendix, on June 30th, while we were working on our reply in a conversation about the briefing schedule, I pointed out, I saw what they did. Part of my problem is your terminology. You're talking about a reply. This is a motion for a summary judgment. A response. You have a response. Yes, yes. All right. While we were working on our response, on June 30th, I believe the record shows, it's in the appendix, I contacted Defendant's counsel. Right. Now, you're talking about both formal filings and informal contacts with opposing counsel. But they wanted to stand on the pleading as it was. They didn't respond positively to your overture. Right. And then we wrote a letter. Right. And they didn't respond positively to that either. And then our response to the motion for summary judgment, which the cases often recognize as a point where you clarify what the claim is about, we pointed out that problem, what had occurred. Then we filed our motion for leave to amend. August 9th. Or to clarify, before their reply brief was due. They acknowledged that motion in their reply brief. And then in their reply brief, they also raised a similar issue saying we had not previously alleged the theory of constructive discharge in the brief for contract claim. So we then filed a new motion. Count one. Going to count one and count five. So my point on these things is, one, I think the pleadings are sufficient to allow us to pursue the claim. Second, and we brought it to their attention before their reply brief was due. We moved for leave to amend. If that was required, I think that should have been granted. Ordinarily, of course, the district court is given a lot of discretion whether the grant leaves to amend. But I think in this case, district court deserves somewhat less discretion. Do you think the district court should have been looking at this under rule 16 or rule 15? Well, probably both because I brought the motion under rule 15. Right. But there was a case management order rule 16 before. Right. Requires good cause to. Right. And the motion said. Because your amendment is way late under the case management. Right. And we moved to amend under rule 15 or 15. Defendant said you should have brought it under rule 16. We did not have a chance to reply to that. And that's why I think the court deserves less discretion. And I think the court should look at good cause. Was there good cause here? We addressed the standards in our motion. A lot of it goes to whether the defendant was prejudiced. No, that's a rule 15 standard. The rule 16 standard is good cause and the district court's consent. If you don't have both. Rule 16 is actually a heightened standard. Right. It's tougher than rule 15. I believe the standard in your honor includes. It's good cause and the judge's consent. If you don't get both, you can't amend after the deadline in the scheduling order has passed. And we're, again, three years late. And I believe in looking at good cause under rule 16, the court considers prejudice or surprise in the non-moving party, but also the ability of the party to continue to prejudice. And I think the court thinks you're going to, is the extent and disruptions of the orderly and efficient trial of the case or other case court and the bad willfulness of the plaintiff, of the party seeking it, which is us or which is me. Right. We're five years into the litigation. I mean, if there were a due process property claim lurking somewhere in this complaint, a federal due process property claim, you'd think that you would have mentioned it earlier. I think. And if the judge, you know, the judge has wide discretion to reject a claim of good cause under these circumstances. And, and there's also a second requirement. It's not just the good cause requirement. The judge has to consent. And that's very differential. The judge only looked at prejudice. And I think the rules of pleading are that we plead the operative facts to state the claim. It's not that we use any magic words. We plead the operative facts. Right. But as, as chief judge Wood has pointed out, you pointed solely and explicitly in the direction of a Liberty interest deprivation. And that that's more than just a head fake. I mean, that that's a pleading choice. But it wasn't a pleading choice. It was a, it was a mesh. It's sort of like your honor. If I said. After oral arguments, I, somebody said, well, how long? I said, judge would last a lot of tough questions. No, it doesn't mean that. These are formal pleadings. This is not just a casual conversation or even an oral argument conversation. The pleading means something and you make a choice to allege an explicit Liberty interest claim. Omitting a property interest claim. You you're bound by that choice. I don't think so. Yeah. Because the Supreme court has said, it's not a game of pleading. We have to use the magic words, even a misstatement of plea. If we had said Liberty interest and if we were, I'm going to harp on this again. If we were still on a 12 B six motion, I think you would have much more of a leg to stand on, but we are years into this litigation. Briefing summary judgment where the party has relied on the scope of what you say you're asserting. Well, I think you're out of the standard is the same. I think we've shown good cause. I think we've shown lack of prejudice. I think we have not put ourself out of court on the property interest plan. We've cleared all of the operative facts that give rise to that claim and all of the, uh, and the statute by which we're seeking that claim. We sought the relief. I think that's required. Okay. I'll let you save your last minute for rebuttal. Mr. Aldana. Good morning. May it please the court. Mike Aldana and Steve Cruz, on behalf of the defendants. Also here in court is defendant. Dr. Deb Kerr, the superintendent of the Brown Deer school district. So Mr. Aldana, let me turn around the question that I've been pressing on Mr. Shoemaker and ask you, um, why it was late. I mean, it's at the summary judgment stage where theories come into focus, where we get the factual record pulled together, at least enough to see if there's a genuine issue of material fact. Um, and it was not, um, Mr. Towle who is seeking summary judgment. It was, it was you, uh, Brown Deer. And so the first opportunity at the summary judgment stage, he has to clarify the scope of what he's really resting on is in his response to the summary judgment motion that you filed.  you can see that he means to be asserting both theories under the federal due process clause. And so you have a reply. You could have responded to, to those arguments since Wisconsin follows, uh, the jurisprudence of the federal Supreme court on due process. Um, the nature of the arguments wouldn't differ. I certainly understand your argument about the scope of the remedy, but in terms of briefing, uh, I don't see why, uh, he wasn't, he didn't get in under the wire by this July 12 response. Well, I think judge Sykes mentioned this. This was, this case was not only five years old, it was actually six years old. It had been filed in state court. And it was Judge Brandon's case, right? It was three amended complaints had already been filed by that point. And if we go back. Well, it was the second amendment, the three versions of the complaint. Right, this is three versions. It was the second amended complaint. He'd had three kicks at this cat. Do you look at the fifth claim under the second amended complaint? It's absolutely specific. That's the first time the federal theory comes in though. That's why you were able to remove when you did. Right. And, so it doesn't matter. There were two other versions before that. No, but he's the master of his complaint. He knows what he's doing. Mr. Shoemaker is a very veteran, uh, and I mean that in a positive way, lawyer. He knows, he knows how to plead these, uh, these kinds of complaints. But what do you do with the fact that it's very common to see people, um, assert the wrong legal theory. They'll assert the wrong statute. They'll assert, uh, the wrong theory in a number of ways. And we regularly say for at least 12B6 purposes, that that doesn't justify dismissing complaint under Ashcroft, under, uh, and Iqbal, under Twombly. You look to see if the complaint states a plausible claim for relief. Right. And as you, I'm sorry. Go ahead. As you pointed out, we're well behind, beyond Rule 8 analysis. We're well beyond Rule 12B6 analysis. So when, when was the magic motion, uh, moment here? Because your position is July 12 is too late. That somehow he already should have, uh, recognized that he needed to do something to bring the property claim in under the due process. And so, so when should he have done that? There's several junctures after he filed his second amended complaint. Okay. And we removed it where he knew or should have known that he didn't, didn't just misstate a legal theory or misstate a claim because there's no way you can look at this complaint and say, oh, it's clear that he called it a liberty of interest, but what he was really alluding here was a property interest, or he cited to the wrong number of the statute. The differences between the state claims and the federal claims are very stark. And I'm looking at this complaint when it comes in and I'm making the conclusion he's decided not to allege a federal deprivation of property interest. Did that strike you as at all odd? Uh, I'm going to let that one go. Don't answer that. It strikes me as somewhat odd. Yeah. But in any event, there's several junctures even after that point where he knew or should have known that his, this complaint did not state a property interest. So I, we removed to federal court docket entry number one at the district court level. And we say, and I'll quote the, uh, we, we stated that there was a single claim and I use the word claim in the singular under, uh, that was called into federal question. So that's docket entry number one. We answered his second amended complaint and we set out, unlike many other litigants, we set out specifically their allegations and then we put our responses underneath it. Presumably he reads our answer and he looks at his allegations again. And at that point he should have said to himself, I only allege a liberty interest claim. So when you answer to, you mean that you're answering all of the counts. You're not just answering count five. Correct. You're answering count four with the Wisconsin liberty and property. Right. And we also, we got his attention on the answer because we filed a counterclaim against Mr. Towle at that time, alleging that he had misrepresented his, uh, past on the employment application. So Mr. Towle had to file an answer at that bar and answer to our counterclaim. So there's two points immediately after he files the second amendment complaint. Then we have a scheduling conference in the fall of that year. And Mr. Shoemaker says to the court, I don't need additional time to amend my pleadings. So presumably at that point he should have, or did go to his complaint and say, okay, my pleadings look good. Then fast forward two more years. It's March of 2013. We have another rule 26 conference because the case had been put into abeyance. Mr. Shoemaker asked for 30 more days at that point to, to the court to amend his pleadings. The court gives him 30 days. That's where that April 26th, 2013 date becomes operative. He never amended his complaint. So presumably during that time, he's going back to his complaint saying, do I need to do anything? He didn't do anything. So there were many opportunities there for Mr. Shoemaker and Mr. Towle to amend the complaint. They didn't do it. And Mr. Shoemaker never addressed in his brief at the court, at the district court, the 16 before analysis. Was there any kind of case management order listing contentions of both sides or anything of the sort? Not very generically. Nothing that we could look to that would be a better source than the complaint? No. Okay. So Mr. Shoemaker never addressed the 16 before analysis at the trial court level. He didn't do it at the court of appeals level until his reply brief. So any argument that he's making now on good cause, which he can't meet in any event, he waived by not raising that issue before. And turning to the substance of the factual allegations, apart from this whole procedural history, which may be dispositive here, but the factual allegations, as I understand them, are that he never lost his job. He was never fired. He quit after some period of time. And so the process was ongoing. There wasn't a deprivation of process in the sense that you would expect to see when a public employee loses his or her job. He was suspended with pay, so there was no deprivation of a property interest at that point. And the investigation was ongoing at the time that he eventually quit in favor of taking a new job offer, which then was rescinded. Right. The trial court never got to that, but you're absolutely right in the facts. He was suspended because of these business irregularities that Dr. Kerr discovered. But he was paid not only a salary, but all benefits through the June 30th of 2010, which was the end of his contract. He had resigned by that point to take the job at Grayslake. So there was no, and we would have argued if we'd gotten there either on a state claim, that there had been no deprivation of property interest. He's got a. So he argues, though, that this fits in the group of cases where, you know, if they put you in a closet down in the basement for a few years and you can't do anything, that you are actually being deprived of your job. I think that's his focus. He concedes he got the money. Yeah. I think that's a poor analogy because in the case that you're talking about, literally somebody was put into a basement. Right. I remember the case. Into a broom closet and told, you're going to do this job because you've got these special talents here. It was like alphabetizing old records or something. This is different. Mr. Tall was a business manager of a small school district. They discovered that the checking accounts had been overdrawn by $500,000. The overall budget was, what, $19 million or something? Right. Yeah. They discovered unopened bills. They discovered mandatory state reports that had never been done. So they didn't put them in a closet and say, now you're going to manage X. They said, we're going to decide whether we're going to fire you over this. And during the course of the year, there were several attempts by the parties to either resolve it. Then we tried to get into a termination proceeding. Mr. Shoemaker was representing Mr. Tall throughout this entire time. With the hearings, can you remind me? I recall that some of these potential hearings got postponed or canceled by Mr. Tall. And were there some by you or were they all? So there was an initial hearing that was set in December of 2010.  He was essentially seeking broad discovery, which just isn't available at that kind of proceeding. He was objecting because of scheduling conflicts. We rescheduled for January. We then called a mediation. So we've tried to resolve this case numerous times. So wasn't there something in April, too? And then we were about to go to hearing in April. Right. After numerous attempts to get it started again. That's when Mr. Tall came to the district and said, I've got this job at Grayslake. Okay. So he canceled that, too. And so we canceled the hearing because he had submitted a letter of resignation. So we had attempted to give him process throughout this entire period. They had attempted to thwart it in the hopes of getting a job, which he did. But then that went away. Okay. Thank you, Your Honors. All right. Thank you very much. Anything further, Mr. Shoemaker? Yes, Your Honor. I think you have about a minute. Yes, Your Honor. The question of hearings, what Mr. Valdonis said is not accurate in terms of a termination hearing. Mr. Tall was given notice of termination, asked for a public hearing on that. After he did that, Dr. Kerr adjourned it, canceled it, withdrew the termination notice. The hearing in April was on non-renewal of his contract on the issue of after June 30th. But all you have on property is these intangibles, you know, that he wasn't actually working. No. What we have is in SWCC, Head, and Parrott, this court recognized that removing an employee from his contractual position, even if he continues to receive full salary and benefits, can give rise to a deprivation of property without due process if it impedes future job opportunities and other effects on his future income. That's exactly what we have here. Because of this, he's not been able to get another job in addition to the liberty interest. Now, that may be why there's some confusion here about a liberty interest and a property interest in that the property interest does not seek his job, benefits, employees. It seeks his loss of future income from future employment, which has been ruined by both his property and his interest. And as I say, that might, I can't tell you. No, I see the overlap. And I can't tell you that's what I was thinking at the time because I wasn't thinking of choosing one or the other. But that's why the property interest is somewhat different than it would be in some cases. We understand your point. Thank you, Your Honor. Thank you very much. Thanks to both counsel. We'll take the case under advisement.